IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ALLIED WORLD ASSURANCE
COMPANY (U.S.), INC.

    Plaintiff,

vs.   Case No.:

BAY COUNTY HEALTH SYSTEM,
LLC d/b/a BAY MEDICAL CENTER
SACRED HEART HEALTH SYSTEM,

    Defendant.

_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Allied World Assurance Company (U.S.), Inc. ("Allied World"), brings this action seeking declaratory relief against Defendant, Bay County Health System, LLC d/b/a Bay Medical Center Sacred Heart Health System ("Bay Medical Center"), and alleges as follows:

### Parties, Jurisdiction and Venue

1. Allied World is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the State of New York.

2. Upon information and belief, Bay Medical Center is a limited liability company with its principal place of business in the State of Florida.

1

121926029.4

3. Upon information and belief, Bay Medical Center is comprised of the following members: Kevin Joseph; Michael Murdoch; Alan Nickelsen; W.L. Nyland; Amie Remington; Kristine Rushing; Matthew Vinson; Angie Watson; Bernard Yates.

4. Upon information and belief, each of the members of Bay Medical Center are natural persons domiciled in the State of Florida, which is where they reside with the intent to remain.

5. Upon information and belief, there are no members of Bay Medical Center who are citizens of the State of Delaware or the State of New York.

6. Upon information and belief, Bay Medical Center was, at all material times, a related entity to LHP Hospital Group, the first named insured on the insurance policy referenced herein.

7. The Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy is in excess of $75,000, exclusive of interest and costs.

8. This Court has personal jurisdiction over Bay Medical Center.

9. Venue is proper in this Division pursuant to 28 U.S.C. § 1391.

10. This action is brought pursuant to 28 U.S.C. § 2201, which provides that the Court may declare the rights and other legal relations of the parties. Allied

World and Bay Medical Center are parties having an interest in the insurance policy referenced herein.

11. All conditions precedent to bringing this action have been satisfied, performed and/or are otherwise waived.

## Background

A. **The Policy**

12. Allied World issued Healthcare Excess and Umbrella Liability Insurance Policy to LHP Hospital Group ("LHP") bearing policy number 0306-3289 for the Policy Period of February 1, 2016 to August 1, 2017, which provided certain coverage in excess of this Court's jurisdictional threshold pursuant to the policy's terms, conditions and exclusions (the "Policy"). A true and correct copy of the Policy is attached as Exhibit 1.

13. Insuring Agreement I.A. of the Policy, as amended by Endorsement No. 14, provides:

> **A. UMBRELLA CLAIMS MADE PROFESSIONAL LIABILITY**
>
> The **Insurer**[1] will pay on behalf of the **Insured**, subject to the Limits of Liability set forth in the Declarations, **Loss**, in excess of the **Applicable Underlying Limit** for the coverage identified in Item 1 of the Schedule of Underlying Insurance or Self-Insurance which the **Insured** becomes legally obligated to pay as a result of a **Claim** alleging a **Medical Professional Incident**, provided always that:

---

[1] Bolded terms are defined in the Policy and should be ascribed the meaning given to them in the Policy.

    1.    such **Claim** is first made against the **Insured** during the **Policy Period** or any applicable Extended Reporting Period; and

    2.    notice of such **Claim** is given to the **Insurer** in accordance with Section IV.D. of this Policy.

    **Defense Expenses** are paid by the **Insurer** in addition to the Limits of Liability, but excess of the **Applicable Underlying Limit** for the coverage identified in Item 1 of the Schedule of Underlying Insurance or Self-Insurance.

Policy, § I.A., as amended by Endorsement 14.

14.    **Insured** is defined to include the **Named Insured** and any **Insured Entity**. Policy, § II.M.

15.    **Insured Entity** is defined to mean "the organization(s) listed in Schedule A." Policy, § II.O.

16.    Schedule A includes Bay Medical Center as an **Insured Entity**. Policy, Endorsement No. 6, Schedule A.

17.    With respect to Insuring Agreement I.A., **Claim** is defined as "a written notice received by any **Insured** that a person or entity intends to hold an **Insured** responsible for a **Medical Professional Incident**." Policy, § II.F.1.

18.    The Policy defines **Medical Professional Incident**, in relevant part, as "an actual or alleged act, error or omission by the **Insured** in the rendering of or failure to render **Medical Professional Services**." Policy §II.W.1.

19.    The Policy defines **Medical Professional Services** as follows:

4

> "**Medical Professional Services**" means services performed by an **Insured**, on behalf of the **Named Insured** or an **Insured Entity**, in the treatment or care of any person, including: medical, surgical, dental, nursing, psychiatric, mental health, osteopathic, chiropractic, or other professional healthcare or healthcare-related services; the use, prescription, furnishing or dispensing of medications, drugs, blood, blood products, or medical, surgical, dental or psychiatric supplies, equipment or appliances in connection with such treatment or care; the furnishing of food or beverages in connection with such treatment or care; the providing of counseling or social services in connection with such treatment or care; and the handling of or performance of post-mortem examinations on human bodies; but **Medical Professional Services** shall not include **Managed Care Activities**.

Policy, § II.X.

20.     The Policy's Assistance and Cooperation Condition contains the following relevant provisions:

> As a condition to coverage, all **Insureds** shall assist and cooperate with the **Insurer** in the investigation, defense and settlement of all **Claims**. All **Insureds** are additionally required to:
>
> * * *
>
> 3.   not make any admission of liability;
> 4.   pursue any and all rights of subrogation, contribution or indemnification against any person or organization who may be liable to any **Insured** because of any injury or damage with respect to which coverage is provided under this Policy or any **Underlying Insurance**; . . .
>
> * * *

5

> No **Insured** shall do anything to prejudice the **Insurer's** rights under this policy, nor shall any **Insured** settle any **Claim** for an amount in excess of the **Applicable Underlying Limit** without the **Insurer's** prior written consent.

Policy, § IV.E.

21. The **Applicable Underlying Limit** with respect to Insuring Agreement I.A. is $1,000,000 Per Claim with a $6,000,000 Aggregate Limit. Policy § II.B.1. & Schedule of Underlying Insurance.

22. Upon information and belief, the **Applicable Underlying Limit** with respect to Insuring Agreement I.A. was exhausted through payment of other claims in or around June 2019.

  **B.** **Bay Medical Center's Treatment of Patient**

23. In May 2016, a patient ("Patient") initially visited the emergency department at Bay Medical Center in Panama City, Florida.

24. At Patient's initial visit to the Bay Medical Center, Patient was diagnosed, treated with antibiotics, and was discharged the same day.

25. When Patient's condition worsened, Patient returned to the Bay Medical Center emergency department two days later, where Bay Medical Center did not perform procedures needed to make a definitive diagnosis.

26. Patient was discharged approximately a week later, with a discharge plan to follow up with a free clinic.

27. Patient returned to the Bay Medical Center emergency department approximately two months later, where Patient was diagnosed with irreversible internal damage and advised that further medical treatment was needed.

28. Upon information and belief, Bay Medical Center began providing medical treatment to Patient at no charge in August of 2016.

29. Patient's treatment at Bay Medical Center and the resulting injuries are hereinafter referred to as the "Incident."

    C.    **Notice to Allied World**

30. On or about August 15, 2016, LHP first provided Allied World with notice of the Incident involving Patient's medical treatment at Bay Medical Center. A redacted copy of the Notice of Incident is attached as Exhibit 2.[2]

31. Although LHP advised Allied World of the Incident, Patient had not provided written notice to LHP or Bay Medical Center that Patient intended to hold LHP and/or Bay Medical Center responsible for the Incident, nor had Patient filed a lawsuit.

32. In a letter dated December 21, 2018, Allied World advised LHP and Bay Medical Center that there was no coverage available for the Incident because neither LHP nor Bay Medical Center had received written notice from Patient, or

---

[2] In order to protect Patient's confidential information, Allied World has redacted protected health information from Exhibit 2–5 hereto. Bay Medical Center and LHP are in possession of unredacted copies of these Exhibits. To the extent that it is necessary to file unredacted copies of these Exhibits, Allied World will do so pursuant to the HIPAA Protective Order that it will seek in this action.

121926029.4

anyone on Patient's behalf, that Patient intended to hold LHP and/or Bay Medical Center responsible for the Incident and, therefore, there no **Claim** had been made pursuant to the Policy. A redacted copy of Allied World's December 21, 2018 letter is attached as Exhibit 3.

33. In its December 21, 2018 letter, Allied World also advised LHP and Bay Medical Center of their obligations under the Policy, including their obligations not to make any admission of liability or settle any matter without Allied World's prior written consent. Ex. 3.

34. In August of 2019, Allied World was advised that Bay Medical Center was engaged in settlement negotiations with Patient even though Patient still had not provided written notice of an intention to hold LHP and/or Bay Medical Center responsible for the Incident.

35. Allied World learned that while the settlement was not final, Bay Medical Center had exchanged drafts of a settlement agreement with Patient or Patient's counsel and had transferred settlement funds into an annuity to lock in the interest rate.

36. Allied World also learned that Bay Medical Center assisted Patient in obtaining legal counsel so that they could engage in settlement negotiations through Patient's counsel.

37. By letter dated January 3, 2020, Allied World advised LHP and Bay Medical Center that it had not been consulted about, nor had it provided its consent to, any settlement with Patient. A redacted copy of Allied World's January 3, 2020 letter is attached as Exhibit 4.

38. In its January 3, 2020 letter, Allied World requested that, to the extent Bay Medical Center and LHP intended to seek coverage for any settlement under the Policy, Allied World be updated as to the current status of the settlement negotiations and, going forward, that Allied World be kept apprised of all settlement negotiations. Allied World further requested copies of all letters, emails or other communications between LHP or Bay Medical Center and Patient. Ex. 4.

39. LHP and Bay Medical Center provided Allied World with: 1) a July 22, 2019 letter of representation from Patient's attorney, which requested medical records, but did not include a demand for any damages; 2) a July 26, 2019 letter from counsel for LHP and Bay Medical Center providing Patient's medical records to Patient's counsel; and 3) a September 23, 2019 letter from counsel for LHP and Bay Medical Center providing the draft settlement agreement already provided to Allied World. LHP and Bay Medical Center did not provide the requested timeline of all settlement negotiations or any other letters, emails or communications with Patient or Patient's counsel.

40. On April 24, 2020, Allied World received notice that Bay Medical Center had reached a settlement with Patient in which Bay Medical Center agreed to pay Patient a total of $2,020,968.27 (the "Settlement").

41. Allied World was not consulted about, nor did it provide its consent to, this Settlement.

42. Upon information and belief, LHP is not a party to the Settlement.

43. Neither LHP nor Bay Medical Center have ever provided Allied World with a written notice from Patient of Patient's intent to hold LHP and/or Bay Medical Center liable for the Incident.

44. Allied World has never been provided with any written demand from Patient or Patient's counsel to LHP and/or Bay Medical Center regarding the Incident.

45. Patient has never filed a lawsuit against LHP and/or Bay Medical Center regarding the Incident.

**D. The Parties' Dispute**

46. On April 24, 2020, Bay Medical Center, through its third party administrator, requested that Allied World provide its coverage position with respect to the Incident and Settlement.

47. Upon information and belief, Bay Medical Center seeks to recover a portion the of the $2,020,968.27 Settlement in excess of $75,000 from Allied World.

48. By letter dated May 21, 2020, Allied World advised Bay Medical Center and LHP that there was no coverage available for the Settlement under the Policy. A redacted copy of Allied World's May 21, 2020 letter is attached as Exhibit 5.

49. Consequently, there is presently a bona fide, actual, and justiciable controversy between Allied World and Bay Medical Center regarding whether the Policy provides coverage for the Incident and Settlement.

50. Allied World is entitled to a declaration construing the Policy, resolving the dispute between the parties, and declaring that there is no coverage under Policy for the Incident or Settlement.

## COUNT I
### Declaration of No Coverage

51. Allied World incorporates by reference and reallages each and every allegation of Paragraphs 1 through 50 of its Complaint, as it fully stated herein.

52. There is no coverage for the Incident or Settlement under the Policy for the following reasons:

   a. Bay Medical Center never received written notice from Patient, or anyone on Patient's behalf, that Patient intended to hold Bay Medical

       Center responsible for a **Medical Professional Incident**. Accordingly, no **Claim** was made under the Policy.

   b. Even if Bay Medical Center received written notice from Patient, or anyone on Patient's behalf, that Patient intended to hold Bay Medical Center responsible for a **Medical Professional Incident**, such written notice was never provided to Allied World.

   c. Bay Medical Center breached its assistance and cooperation obligations under Section IV.E. of the Policy, thereby prejudicing Allied World's rights, by, without limitation: 1) settling with Patient for an amount in excess of the **Applicable Underlying Limit** without Allied World's prior written consent; 2) failing to keep Allied World apprised of the settlement negotiations with Patient; 3) assisting Patient in obtaining Patient's own counsel; and 4) failing to provide all information requested by Allied World.

53.    As a result of the forgoing, there is presently a bona fide, present, actual, and justiciable controversy regarding coverage under the Policy in connection with the Incident and Settlement, and therefore a declaratory judgment pursuant to 28 U.S.C. § 2201(a) is necessary to determine the parties' respective rights and duties under the Policy.

54. Allied World is entitled to a declaratory judgment in its favor stating that it has no liability under the Policy for the Incident or Settlement.

WHEREFORE, Allied World Insurance Company respectfully prays that the Court declare the rights of the parties and declare that Allied World has no liability under the Policy for the Incident or Settlement and for such other and further relief as the Court may deem just and proper.

Dated: May 22, 2020

        Respectfully submitted,

        */s/ Gregory A. Gidus*
        Gregory A. Gidus
        Florida Bar No. 105930
        Primary: ggidus@carltonfields.com
        Secondary: dlester@carltonfields.com
        Secondary: tpaecf@cfdom.net
        Heidi Hudson Raschke
        Florida Bar No. 61183
        Primary: hraschke@carltonfields.com
        Secondary: pparrey@carltonfields.com
        Carlton Fields, P.A.
        P.O. Box 3239
        Tampa, FL 33601-3239
        Telephone: (813) 223-7000
        Facsimile: (813) 229-4133
        *Attorneys for Allied World Assurance Company (U.S.), Inc.*

121926029.4